UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Cassius Lamar Shine,          :
          Plaintiff,          :
                              :
     v.                       :     File No. 2:06-CV-237
                              :
Robert Hofmann, Susan         :
Blair, Jodie Chafee,          :
Modiano, Kevin Ashburn,       :
Nick Burnham,                 :
          Defendants.         :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 5)

Plaintiff Cassius Lamar Shine, proceeding *pro se* and
*in forma pauperis*, claims that his constitutional rights
were violated while he was a federal detainee
incarcerated in Vermont.  Specifically, Shine claims
that: (1) he was denied access to the courts; (2)  he was
subjected to unconstitutional conditions of confinement;
(3) he was retaliated against for filing a grievance, and
(4) he was attacked by a corrections officer.

Pending before the Court is the defendants' motion
to dismiss.  The motion, filed pursuant to Rule 12(b)(6),
presents an array of defenses including failure to state
a claim, sovereign immunity and qualified immunity.  For
the reasons set forth below, I recommend that the motion
(Paper 5) be GRANTED in part and DENIED in part.

<u>Factual Background</u>

The purposes of the motion to dismiss, the facts alleged in the complaint will be accepted as true.  Shine is a federal inmate currently incarcerated in Ray Brook, New York.  During the time period relevant to this lawsuit, he was a federal pre-trial detainee in the custody and care of the Vermont Department of Corrections ("DOC").

Shine's first allegation pertains to an attempt to communicate with his attorney.  On or about November 14, 2005, he wrote a letter to counsel discussing the conditions of his confinement and the planning of his criminal defense.  The conditions of confinement issue had to do with the alleged lack of fire sprinklers in Shine's living area.  Shine claims that because he had complained about this issue in the past, his mail was intercepted, opened and read by corrections officer Modiano.  Modiano then brought the letter to him and asked him to confirm that he was its true sender.  Shine contends that Modiano's actions violated his access to the courts.

Shine's second claim is that the lack of sprinklers

presented dangerous living conditions in violation of his
constitutional rights.  On December 5, 2005, he filed a
grievance concerning the facility's alleged non-
compliance with state building codes.  After an
investigation, prison personnel concluded that no action
was needed because the unit had smoke detectors and fire
extinguishers, and a sprinkler system was due to be
installed in 2005.  Nonetheless, Shine claims that prison
Superintendent Sue Blair and Maintenance Supervisor Jodi
Chafee "falsified safety records and were deliberately
indifferent to state building codes placing plaintiff's
life in danger.  Plaintiff had no access to a fire
extinguisher and would have perished in flames in a
calamity before help could arrive."  (Paper 4 at 6).

Shine next alleges that in retaliation for filing
the grievance, Blair and DOC Commissioner Robert Hofmann
transferred him to the Southern State Correctional
Facility ("SSCF") in Springfield, Vermont.  Once at SSCF,
Superintendent Blair allegedly placed Shine in "close
custody . . . without the possibility of ever being
released into general population."  While in close
custody, Shine was not allowed adequate access to legal

3

materials, and was denied all access to religious services and educational/vocational programs.  Id. at 6-7.

Shine further claims that defendant Kevin Ashburn ordered that he be placed in automatic lock down while in close custody.  The procedures used to place Shine in lock down allegedly violated his procedural due process rights because "there was no impartial reviewing body to discern on a case by case basis whether close custody is warranted for the individual."  Id. at 7.

In a related claim, Shine alleges that his placement in disciplinary segregation impeded his ability to present a defense to the criminal charges pending against him.  Specifically, he claims that segregation interfered with his ability to communicate with his attorney on the subject of a speedy trial.  He also claims that, because of his segregation, he lost contact with witnesses he intended to call at trial.

Shine next argues that his conditions of confinement at SSCF violated his rights as a pre-trial detainee.  He states that his cell was six feet by nine feet, that there were no windows, and that he was unable to interact

4

with other people.  "Plaintiff was made subject to
complete sensory deprivation though he was not convicted
of any crime and was only housed at the prison to ensure
his presence at trial."  Id.

Shine's final allegations arise out of an alleged
assault by a correctional officer.  On January 26, 2006,
Shine was mopping his cell when he was allegedly
assaulted from behind by defendant Nick Burnham.  Burnham
proceeded to call Shine a "'hard headed nigger'" when,
after being ordered to stop mopping, Shine continued to
mop.  Burhnam then sprayed Shine with mace in his face
and eyes.  In addition to the claim against Burnham,
Shine is suing Superintendent Kevin Ashburn for failure
to protect him from Burnham, "a racist who hated blacks
and who had previously assaulted another black inmate."
Id. at 8.

For relief, Shine is seeking damages and injunctive
relief in the form of (1) an order barring Burnham from
working inside any prison, (2) required racial
sensitivity training for all prison staff members, and
(3) the discontinuation of close custody for federal pre-
trial detainees in DOC custody.

<u>Discussion</u>

I.  <u>Motion to Dismiss Standard</u>

The defendants have moved to dismiss pursuant to Rule 12(b)(6).  On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor.  <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.'"  <u>ATSI Comms., Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007)).  The Court remains mindful that *pro se* pleadings are to be read liberally.  <u>See</u> <u>Phillips v. Girdich</u>, 408 F.3d 124, 128 (2d Cir. 2005).

II.  <u>Access to Courts</u>

The defendants first address Shine's allegations that he was denied access to the courts.  This claim is comprised of three separate occurrences.  First, there is Shine's claim that his mail was opened and returned to him, thereby impeding his ability to communicate with his

6

attorney.  Second, he alleges that placement in close custody limited his ability to access legal materials. Third, Shine claims that his placement in segregation barred him from contacting his attorney and potential witnesses.

The defendants argue for dismissal on the ground that Shine has failed to show that he suffered actual injury.  Inmates have a First Amendment right of access to courts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 350 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977).  "However, this right is not 'an abstract, freestanding right to a law library or legal assistance and cannot ground a Section 1983 claim without a showing of 'actual injury.'" <u>Collins v. Goord</u>, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting <u>Lewis</u>, 518 U.S. at 351).  Furthermore, the actual injury requirement "'is not satisfied by just any type of frustrated legal claim,' because the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" <u>Id.</u> (quoting <u>Lewis</u>, 518 U.S. at 355).  "'Impairment of any *other* litigating capacity is simply one of the

incidental (and perfectly constitutional) consequences of conviction and incarceration.'"  Id. (emphasis and parenthetical in Lewis).

Shine first alleges that his mail was returned to him.  He does not, however, allege any actual injury resulting from this conduct.  Similarly, he has failed to allege that his difficulties in communicating with defense counsel, his "inadequate" access to legal materials, or his inability to contact witnesses caused him actual harm.  Accordingly, his claim falls short of stating a constitutional violation for denial of access to the courts, and the motion to dismiss this claim should be GRANTED.[1]

III.  Procedural Due Process

The defendants next submit that Shine's placement in close custody at SSCF did not violate his due process

---

[1]  In response to the motion to dismiss, Shine cites cases standing for the proposition that legal mail may not be opened unless the inmate is present.  Here, Shine has alleged that his letter was clearly marked as going to an attorney, and that Modiano opened it before returning it to him for verification of the signature.  While the Court notes that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation," it may be appropriate to allow Shine an opportunity to amend his mail-related claim.  See Davis v. Goord, 320 F.3d 346, 351-52 (2d Cir. 2003).  Shine may also wish to more specifically allege the ways in which he was actually harmed by any interference with his access to the courts.  Accordingly, if Shine wishes to file a motion to amend pursuant to Rule 15, he may do so and, after the defendants have been given an opportunity to respond, the Court will rule on the permissibility of such an amendment.

rights.  Shine contends that his placement in close custody violated his rights because there was "no impartial reviewing body" to determine whether close custody was warranted.  He also asserts that there should be consistency in housing classifications from one federal pre-trial detention center to another.

The defendants argue that where state prison officials have complete discretion to determine inmate classifications, those inmates have no constitutionally or federally-protected liberty interest that would entitle them to due process protection.  However, the defendants have not cited any authority showing that prison officials in this case had such complete discretion.  Furthermore, recent Second Circuit case law suggests that a federal pre-trial detainee such as Shine has a liberty interest in not being placed in close custody for an extended period of time.  See Iqbal v. Hasty, 490 F.3d 143, 163 (2d Cir. 2007).[2]

The defendants also argue that even if a liberty interest applies, "there were penological reasons for his

---

[2]  Although the complaint does not say how long Shine spent in close custody, a later filing states that he was in close custody for at least 34 months.  (Paper 16 at 6).

close custody classification." (Paper 5 at 6). Whatever those reasons may have been, they are not specifically set forth in the defendants' motion, and are not alleged in the complaint or its attachments. Consequently, I recommend that the motion to dismiss Shine's procedural due process claim be DENIED.

IV. <u>Conditions of Confinement</u>

Shine asserts a series of conditions of confinement claims ranging from lack of fire sprinklers to sensory deprivation. Although he brings his claims under the Eighth Amendment, his status as a pre-trial detainee means that his protections fall within the purview of the Fourteenth Amendment and substantive due process. <u>Benjamin v. Fraser</u>, 343 F.3d 35, 49-50 (2d Cir. 2003). "This is because '[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime, and thus, under the Due Process Clause, may not be punished in any manner – neither cruelly or unusually or otherwise." <u>Id.</u> at 50-51 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 536 (1979)).

Accordingly, the government may subject a pre-trial detainee to restrictions inherent in confinement so long

10

as the resulting conditions do not "amount to punishment
of the detainee." Bell, 441 U.S. at 535.  "Not every
disability imposed during pretrial detention amounts to
'punishment' in the constitutional sense." Id. at 537.
When determining whether a condition of confinement is
constitutional, "[a] court must decide whether the
disability is imposed for the purpose of punishment or
whether it is but an incident of some other legitimate
governmental purpose." Id. at 538.  Absent an express
intent to punish, the determination generally turns on
"whether an alternative purpose to which [the
restriction] may rationally be connected is assignable
for it, and whether it appears excessive in relation to
the alternative purpose assigned [to it]." Id. at
538-39.

A.  Sprinklers

Shine's first claim is that the prison did not have
adequate fire sprinklers and did not provide access to
fire extinguishers.  There is little question that the
government has a constitutionally-imposed duty to provide
prisoners with a reasonably safe environment.  As the
Supreme Court has explained, "when the State by the

11

affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.* . . . reasonable safety – it transgresses the substantive limits on state action set by the . . . Due Process Clause." <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 199-200 (1989) (citation omitted).  The Supreme Court has also held that, in cases of environmental risks to prisoners, a prison condition is actionable if it poses "an unreasonable risk of serious damage to [the inmate's] future health." <u>Helling v. McKinney</u>, 509 U.S. 25, 32-34 (1993).

The defendants argue that a lack of sprinklers is not actionable because it is merely "an inconvenience." They also assert that Shine has failed to show actual or imminent harm.  These arguments are insufficient for dismissal.  Accepting the facts alleged in the complaint as true, courts have held that "[t]he absence of adequate and reliable fire protection [in prisons] can give rise to a Fourteenth Amendment Due Process claim." <u>Benjamin v. Kerik</u>, 1998 WL 799161, at *4 (S.D.N.Y. Nov. 13, 1998);

12

see also Coniglio v. Thomas, 657 F. Supp. 409, 414
(S.D.N.Y. 1987) (collecting cases).  Whether the risks
alleged by Shine were "unreasonable," and therefore
actionable, remains to be shown.  At this early stage in
the case, however, the motion to dismiss Shine's claims
of inadequate fire protection should be DENIED.[3]

    B.  Disciplinary Segregation

    Shine next claims that it is unconstitutional to
place a pre-trial detainee in disciplinary segregation.
He alleges that the conditions of such segregation
included a small cell with no windows and no opportunity
to interact with other human beings.  "Plaintiff was made
subject to complete sensory deprivation though he was not
convicted of any crime and was only housed at the prison
to ensure his presence at trial."  (Paper 4 at 7).

    Shine appears to be claiming that a pre-trial
detainee may not be placed in disciplinary segregation,
and that doing so is a *per se* constitutional violation.
This argument ignores the Supreme Court's determination
that prisons may impose restrictions on pre-trial

---

[3]  Shine seeks only damages on this claim.  Because the defendants have
not addressed the issue, the Court expresses no opinion as to whether a
pre-trial detainee is entitled to damages for potential harm.

detainees so long as those restrictions are related to a
non-punitive governmental purpose.  <u>Bell</u>, 441 U.S. at
538-39.  Furthermore, "the transfer of an inmate to less
amenable and more restrictive quarters for nonpunitive
reasons' is not a right protected by the due process
clause itself."  <u>Covino v. Vermont Dep't of Corrections</u>,
933 F.2d 128, 129 (2d Cir. 1991).  It is, therefore,
clear that simply transferring Shine to a more
restrictive setting, regardless of the reason, did not
automatically violate his constitutional rights.  I thus
recommend that the motion to dismiss this claim be
GRANTED.

    C.  Assault

    Shine's final conditions of confinement claim is
that he was assaulted by a prison guard.[4]  In their
motion to dismiss, the defendants highlight Shine's
allegation that he was maced "*after* [he] refused to
comply with Defendant Burnham's order to stop mopping."
(Paper 5 at 10).  In fact, the complaint alleges that
Burnham *first* assaulted Shine from behind, then ordered

---

[4]  Shine asserts that the guard's conduct violated his rights under the
Eighth Amendment and the Equal Protection Clause of the Fourteenth
Amendment.  The defendants have not addressed the Equal Protection Clause
claim.

him to stop mopping, then applied mace to Shine's face after calling him a "'hard head nigger.'" (Paper 4 at 8).

When bringing an excessive force claim against a correctional officer, a plaintiff must meet two requirements: the use of force "must be, objectively, sufficiently serious," and "the prison official involved must have a sufficiently culpable state of mind." <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks and citations omitted).  This standard is the same for pretrial detainees under the Fourteenth Amendment as it is for convicted inmates under the Eighth Amendment.  <u>See</u> <u>United States v. Walsh</u>, 194 F.3d 37, 50 (2d Cir. 1999).

Shine claims that the assault in this case was unprovoked and was motivated by racism.  The use of force involved a push, and according to statements from other inmates, may have included punching Shine in the face. Accepting Shine's allegation of a racial motive, the Court may infer that force was used not to maintain or restore discipline, but instead to cause harm in a malicious manner.  <u>See</u> <u>Romano v. Haworth</u>, 998 F.2d 101, 105 (2d Cir. 1993).  Consequently, Shine has stated a

15

plausible claim of excessive force, and his cause of
action under the Fourteenth Amendment should not be
dismissed at this time.

V.  Retaliation

     Shine also alleges that he was retaliated against
for filing a grievance about the fire sprinklers.  The
alleged acts of retaliation included defendant Modiano
opening his legal mail, and defendants Blair and Hofmann
transferring him to SSCF.

     "[T]o state an actionable claim for retaliation,
[Plaintiff] 'must advance non-conclusory allegations
establishing (1) that the speech or conduct at issue was
protected, (2) that the defendant took adverse action
against the plaintiff, and (3) that there was a causal
connection between the protected speech and the adverse
action.'"  Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir.
2002) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d
Cir. 2001)).  Because the filing of prison grievances is
a constitutionally protected activity, Shine satisfies
the first element of the test.  Davis v. Goord, 320 F.3d
346, 352-53 (2d Cir. 2003) (citing Graham v. Henderson,
89 F.3d 75, 80 (2d Cir. 1996) and Franco v. Kelly, 854

16

F.2d 584, 590 (2d Cir. 1988)).  He has also satisfied the third element, since his mail appears to have been opened shortly after he stated his intent to file a grievance, and his transfer was approximately one month after his grievance filing.[5]  See Bennett v. Goord, 343 F.3d 133, 138 (2d Cir. 2003) (citing cases) (causation may be shown by "temporal proximity" between filing of grievances and retaliatory actions).

With respect to the second element, adverse action, "a plaintiff must allege that defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  Morales, 278 F.3d at 121 (quoting Dawes, 239 F.3d at 493).  Courts have held that transfers to other facilities can satisfy the adverse-action requirement.  See Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998); Chavis v. Struebel, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004).  Given sufficient factual support, opening mail in an effort to curb an inmate's exercise of his constitutional rights may also be sufficiently adverse.  Cf. Brown v. Williams, 1998 WL

---

[5]  The date of Shine's transfer is alleged in a grievance form attached to the complaint.  (Paper 4-2 at 16).

17

841638, at *6 (E.D.N.Y. Dec. 2, 1998) (summary judgment granted where inmate failed to show "particularized statements by Defendant indicating a retaliatory motive" or facts showing that the defendant "singled him out by opening his mail").

Shine's allegation is that Modiano opened his letter and demanded that he confirm the signature.  Giving the complaint the required liberal reading, the Court may infer that Modiano's actions were intended to deter Shine from filing future grievances.  Interpreted as such, Shine has at least stated a plausible claim that should be allowed to continue beyond the defendants' motion to dismiss.  ATSI Comms., Inc., 493 F.3d at 98 (claim must rise above speculative level).  I therefore recommend that the motion to dismiss Shine's claims of retaliation be DENIED.

VI.  Eleventh Amendment Immunity

The defendants have further moved to dismiss all claims brought against them in their official capacities. Under the doctrine of sovereign immunity, the Eleventh Amendment bars suits by private citizens against a state or its agencies in federal court unless the state has

18

waived its immunity or Congress has properly abrogated that immunity.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996).  The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471 (1985).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the defendants from a damages action brought against them in their official capacities.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989).  It is equally clear that Vermont has not waived its sovereign immunity under § 1983.  See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived).

19

Furthermore, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them.  See Hafer v. Melo, 502 U.S. 21, 27 (1991).  Therefore, the damages claims against the Vermont defendants in their official capacities should be DISMISSED.[6]

VII.   Personal Involvement

    Defendant Hofmann has moved for dismissal of the claims brought against him, arguing that the allegations in the complaint fail to show sufficient personal involvement.  It is well established that damages may not be awarded under § 1983 unless Shine can prove the personal involvement of a defendant in the alleged constitutional deprivation.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

    Shine claims that Hofmann was involved in his

----

[6]  A narrow exception to the Eleventh Amendment's bar is that when a plaintiff alleging a violation of federal law sues a state employee, the court may award prospective injunctive relief against the employee's future official conduct.  See generally Ex Parte Young, 209 U.S. 123 (1908).  Accordingly, the Court should not dismiss Shine's requests for such future injunctive relief.

retaliatory transfer to SSCF.  While Hofmann may not have

had any direct role in Shine's transfer, the extent of

his involvement is not clear from the complaint.  The

text of the complaint simply states that defendants Blair

and Hofmann transferred Shine to SSCF.  Without any

further factual development, the Court should not

conclude at this time that Hofmann's level of personal

involvement in the transfer was insufficient to support

an action for damages.  Accordingly, I recommend that

Hofmann's motion to dismiss for lack of personal

involvement be DENIED.

VIII.  <u>Qualified Immunity</u>

     The defendants' last argument is that they are

entitled to qualified immunity.  In most cases, "'the

defense of qualified immunity cannot support the grant of

a Rule 12(b)(6) motion for failure to state a claim upon

which relief can be granted.'"  <u>McKenna v. Wright</u>, 386

F.3d 432, 435 (2d Cir. 2004) (quoting <u>Green v. Maraio</u>,

722 F.2d 1013, 1018 (2d Cir. 1983).  Because the "fate of

an official with qualified immunity depends upon the

circumstances and motivations of his actions," <u>Green</u>, 722

F.2d at 1018, the assertion of qualified immunity will

not support dismissal unless "the defense is based on facts appearing on the face of the complaint."  McKenna, 386 F.3d at 436.

The defendants first argue that monitoring inmate mail serves a legitimate penological interest, and that simply asking an inmate to confirm his signature does not violate a clearly established right.  The complaint, however, does not discuss the penological purpose behind stopping Shine's mail.  In fact, the allegation is that the motivation for stopping his mail was retaliatory.  For reasons discussed above, Shine's retaliation claim survives the defendants' motion, and the facts alleged in the complaint do little to support a claim of qualified immunity.

The defendants next claim that "there is no clearly established law that would have forbidden Defendants Hofmann and Blair from transferring Plaintiff to another prison facility and placing him in close custody there." (Paper 5 at 18).  They present a similar argument regarding Shine's claims of disciplinary segregation and the excessive force.  To the extent noted above, Shine had constitutional protections with respect some of these

22

events.  Although the defendants contend that their decisions to transfer Shine are entitled to deference, the facts presented thus far do not support that claim. I therefore recommend that the defendants' request for dismissal based upon qualified immunity be DENIED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 5) be GRANTED in part and DENIED in part.  Specifically, I recommend that the motion be GRANTED with respect to Shine's First Amendment claim that his access to the courts was impeded, and with respect to his Fourteenth Amendment substantive due process claim concerning his placement in disciplinary segregation.  The motion should also be GRANTED with respect to any claims for damages brought against the defendants in their official capacities.  The motion should be otherwise DENIED.

Dated at Burlington, in the District of Vermont, this <u>24</u><sup>th</sup> day of January, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

23

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).